# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

COURTNEY SMITH, # 181090,      :

     Plaintiff,           :

vs.                    :     CIVIL ACTION 19-0857-CG-N

ASHLEY KIDD, *et al.*,       :

     Defendants.        :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that the Eighth Amendment claim against Defendant Kidd based on Plaintiff's administrative segregation confinement from December 2, 2018 to February 13, 2019 (when he was reclassified) be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a claim upon which relief can be granted, with leave to amend for the purpose of stating a claim against Defendant Kidd based on this period of administrative segregation confinement, and it is further recommended that the other claims in this action against Defendant Ashley Kidd and Defendant Darren Wright be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.

# I. Nature of Proceedings.

## A. Claim I – Defendant Kidd.

This action is before the Court on Plaintiff's third amended complaint, which is Court-ordered. (Doc. 18, PageID.51). Plaintiff named as Defendants officials at Holman Correctional Facility ("Holman"), Lieutenant Ashley Kidd and Correctional Officer Darren Wright. (*Id.* at 5, PageID.55). According to Plaintiff, Defendant Kidd falsely charged him with a violation of Administrative Regulation 403, no. 901, homicide, which resulted in his placement in administrative segregation for thirty-plus months[1], while capital murder charges are pending in state court. (*Id.* at 8, PageID.58). He alleges Defendant Kidd violated the Eighth Amendment, "deliberate indifference," and Administrative Regulation, Rule 403. (*Id.*). On December 13, 2018, Plaintiff was served a disciplinary for homicide by Officer Toles. (*Id.*). The arresting officer on the charge was Defendant Kidd. (*Id.*). On December 26, 2018, Sergeant Ratcliffe held the disciplinary hearing where Defendant Kidd testified that "the information she received le[]d to inmate Courtney Smith #181090 [as the person who] did stab inmate Armstrong." (*Id.* at 9, PageID.59). She stated, however, that Plaintiff was not found with a weapon so if he did not "stab inmate Armstrong, then he was the lead man [who] set up the stabbing." (*Id.*). Moreover, she testified, "Officer Wright identified [Plaintiff] as one of the involved inmates [although she is] not sure how he identified Plaintiff but that[']s what he reported to

---

[1] Elsewhere in Plaintiff's allegations, he states that he has been in administrative segregation for seventeen months. (Doc. 18 at 13, PageID.63).

me." (*Id.*).

At the disciplinary hearing, Plaintiff testified that he was sitting on a bed with "his cousin," inmate Garrett, in the front of the dorm when inmate Armstrong ran to where he and inmate Garrett were sitting. (*Id.*). He saw inmate Armstrong bleeding, so he stood back, and inmate Armstrong ran to the gate. (*Id.*). Plaintiff's witness, inmate Booker, testified that he had no knowledge of the incident. (*Id.*). Plaintiff's other witness, inmate Garrett, testified that Plaintiff, also known as CoCo, was on his bed when inmate "Westgate"[2] got stabbed. (*Id.*). Plaintiff's third witness, Lieutenant McKenzie, testified that it was reported to him that day that members of the Blood gang were responsible for the stabbing. (*Id.* at 10, PageID.25). His "intel" said that Plaintiff was not involved, and to his knowledge, Plaintiff is a "GD."[3] (*Id.*).

Nonetheless, the incident report had reflected that Officer Wright witnessed Plaintiff stabbing inmate Armstrong. (*Id.*). Thus, Sergeant Ratcliffe placed a telephone call to Defendant Wright who said that he had not "actually witnessed [Plaintiff] stabbing inmate Armstrong, but [Plaintiff] did appear to have a knife." (*Id.*).

The hearing officer, Sergeant Ratcliffe, found that Plaintiff was not involved in the incident even though he was in the dorm where the stabbing occurred. (*Id.*).

---

[2] Plaintiff's allegations here refer to the victim as Westgate. (Doc. 18 at 9, PageID.59). No explanation was provided for the victim's different names.

[3] The Court understands "GD" to refer to Gangster Disciples. (Doc. 18 at 24, PageID.74).

He found Plaintiff not guilty due to the absence of "concrete evidence . . . that le[]d to inmate Smith doing or being involved in the stabbing" and to Wright's and Kidd's testimonies being inconsistent with the incident report. (*Id.* & at 19, PageID.69).

Plaintiff attached to the third amended complaint a copy of the disciplinary report as Exhibit C. (*Id.* at 16, PageID.66). Plaintiff's allegations in the third amended complaint tracked the information contained in the disciplinary report.

### B. Claim II – Defendant Wright.

Plaintiff alleges that Defendant Wright "under sworn oath" in the incident report falsely accused him of the stabbing and murder of inmate Armstrong, causing Plaintiff to fear for his life in violation of the Eighth Amendment and Administrative Regulation 403. (*Id.* at 11, PageID.61). Presently, Plaintiff is suffering in administrative segregation due to Defendant Wright. (*Id.*).

Plaintiff maintains on December 2, 2018, Defendant Wright spoke with Investigator SA Jones telling Jones that he recognized an inmate known as Cocoa as one of the four inmates who stabbed inmate Armstrong. (*Id.* at 12, PageID.62). Defendant Wright said that he did not know Cocoa's real name, but Cocoa was a black man with a beard, and he could pick him out of a lineup. (*Id.*). On December 2, 2018, SA Jones and agent Gary Peek presented Defendant Wright with a photo lineup of nine photographs. (*Id.*). Defendant Wright positively identified photo #2, who was "inmate Courtney Smith B/prisoner #263443." (*Id.*). Even though Plaintiff, Courtney Maurice Smith, #181090, has a name like inmate Courtney Smith, #263443, they are two different prisoners. (*Id.*). Plaintiff knows the other

Courtney Smith is a Blood gang member. (*Id*. at 13, PageID.63). Nevertheless, Plaintiff is now facing the death penalty for a crime he did not commit and has been housed in administrative segregation for seventeen months while the murder charge is pending in Escambia County. (*Id*.). Plaintiff presented the mistaken identity problem to the attention of the Alabama Department of Corrections, but he has been repeatedly ignored. (*Id*.). In the meantime, he has lost all privileges that population inmates have, such as access to "educational programs, religion service[s], extra yard time, etc etc." (*Id*.).

Attached to the third amended complaint is the classification summary for Plaintiff's reclassification to close custody and security level 5, with a listing of approved institutions for his placement. (*Id*. at 23, PageID.73). The comments sections and institution recommendation from his classification summary read:

> Reclassification – Recommend inmate Smith's custody be increased to Close until his detainer warrant for murder is resolved.
>
> Inmate Smith has a warrant for murder out of Escambia County. Escambia County District Attorney Steve Billy called Tanya Ary[,]Classification Specialist[,] and advised that the death penalty could be a possible outcome in this case. According to ADOC incident report HC -18-01387[,] on December 2, 2018 at Holman Facility[,] Officer Darren Wright observed and identified inmate Smith stabbing another inmate who later died from his wounds. On December 26, 2018 during inmate Smith's disciplinary hearing[,] Officer Wright informed the hearing officer Sergeant Terrance Ratcliffe that he (Wright) did not actually witness inmate Smith stabbing the other inmate, but it appeared that Smith did have a knife. Inmate Smith was found not guilty of Homicide on the ADOC disciplinary.

(*Id.*).  The specialist's submission was for close custody, security level 5, which was agreed with by the Central Review Board, psych associate, and warden.  (*Id.*).

Additionally, Plaintiff attached as exhibit F, page two from what appears to be a four-page incident report.  (*Id.* at 24, PageID.74).  Its purpose appears to be to support Plaintiff's claim that two prisoners with the name of Courtney Smith were at Holman at the time of the stabbing, and he is innocent of the stabbing as the other Courtney Smith was identified as the assailant.  (*Id.*).  This page reiterates that on December 2, 2018, Defendant Wright identified inmate Courtney Smith B/263443, who is known as Cocoa, as one of the four inmates who stabbed inmate Armstrong.  (*Id.*).

Exhibit F's incident report adds that Plaintiff was interviewed the following day, December 3, 2018, by SA Jones and Agent Peek.  (*Id.*).  Plaintiff was advised of his rights and waived them, and said his nickname was "Cocoa."  (*Id.*).  Plaintiff told them that "he was asleep during the incident and did not see anything."  (*Id.*).  Plaintiff denied stabbing inmate Armstrong and advised that Holman's A-Dorm is a war zone, which keeps one from sleeping in A-Dorm.  (*Id.*).  They noted this inconsistency with Plaintiff's other statement to them - he was asleep at the time of the incident.[4]  (*Id.*).  Plaintiff was informed that he was positively identified from a

---

[4]  It does not escape the Court's attention that in the third amended complaint, Plaintiff's allegations also contradict his statement that he was sleeping when inmate Armstrong's stabbing occurred.  That is, Plaintiff stated that "he was sitting back on the bed with inmate Garrett in the front of the dorm and that is when inmate Armstrong ran to where he and his cousin 'Garrett' [were] sitting."  (*Id.* at 9, PageID.59).  *See Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 n.3 (11th Cir. 1990) ("[A]llegations that are contradicted by other

photographic lineup as one of the four inmates who stabbed inmate Armstrong. (*Id.*).  Plaintiff reiterated that he was asleep during the incident and did not know anything.  (*Id.*).  He also stated that he had known inmate Armstrong for a long time.  (*Id.*).  They also interviewed inmate Garrett who advised that he was not inmate Armstrong's uncle, but younger inmates referred to him as their uncle. (*Id.*).  He said that he knew nothing of the incident but was noted as "visibly shaking and extremely nervous" and wanting to go to his dorm.  (*Id.*).

Later that day, SA Jones went to the Escambia County Courthouse and signed a warrant against Plaintiff for murder.  (*Id.*).  The next day SA Jones and agent David Martinez re-interviewed Plaintiff who did not provide any further information and again denied any involvement in inmate Armstrong's stabbing death.  (*Id.*).  SA Jones then served Plaintiff with the murder warrant.  (*Id.*).  Later, at some unspecified time, SA Jones received information from Terry Raybon, warden at Holman, that inmate Robert Rogers, whose alias is Rob Lowe, ordered the assault on inmate Armstrong, which was the result of a gang war among Bloods, Gangster Disciples, and Crips.  (*Id.*).

For relief, Plaintiff requests from each Defendant $175,000 in nominal damages, $225,000 in compensatory damages, and $250,000 in punitive damages.

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his

---

allegations in the complaint may also constitute grounds for dismissal" as they meet *Neitzke*'s clearly baseless test.).

third amended complaint (Doc. 18) under 28 U.S.C. § 1915(e)(2)(B).  Under §

1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable

basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-

32, 104 L.Ed.2d 338 (1989).  A claim is frivolous as a matter of law where, *inter alia*,

the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim

seeks to enforce a right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)

for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*,

112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim

upon which relief can be granted, the allegations must show plausibility.  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173

L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to

relief above the speculative level" and must be a "'plain statement' possess[ing]

enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at

555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

When considering a *pro se* litigant's allegations, a court gives them a liberal

construction holding them to a more lenient standard than those of an attorney,

*Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998), but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir.) (citation and quotation marks omitted), *cert. denied*, 574 U.S. 1047 (2014). The court treats factual allegations as true, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1951. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

## III. Discussion.

### A. Claim I - Defendant Ashley Kidd.

#### 1. False Charge.

Plaintiff's first claim is against Defendant Ashley Kidd for falsely charging him with a disciplinary for a violation of administrative regulations because he was found not guilty of the charge. Plaintiff, however, does have not have a constitutionally protected right not to be "falsely or wrongly accused" of a disciplinary infraction that may result on a deprivation of a liberty interest. *Freeman v. Rideout*, 808 F.2d 949, 951 (7th Cir.), *cert. denied*, 485 U.S. 982 (1988); *see Watson v. Turner*, 2020 WL 4643478, at *7 (N.D. Ala. 2020) (unpublished); *Pierce v. Carson*, 2014 WL 5643336, at *9 (M.D. Ala. 2014) (unpublished). Rather, the right that a prisoner possesses is not to be denied a liberty interest without due

process. *Freeman*, 808 F.2d at 951; *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Plaintiff received due process when he was afforded a disciplinary hearing at Kilby Correctional Facility ("Kilby"), where he was transferred after the December 2, 2018 stabbing. (Doc. 18 at 8, 16, PageID.58, 66).[5] When an inmate is deprived of a liberty interest as a result of a disciplinary hearing, the inmate is required to have received in the disciplinary proceeding the procedural due process safeguards enumerated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), namely, "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (adding to the *Wolff* requirements that "the findings of the prison disciplinary board [must be] supported by some evidence in the record")[6]; *Young v. Rios*, 390 F. App'x 982, 984 (11th Cir. 2010) (same *Wolff*

---

[5] The incident report reflects that Plaintiff was transferred to Kilby shortly after the incident either December 3, 2018 or December 4, 2018. (Doc. 18 at 23, PageID.74).

[6] The *Wolff* Court in announcing these due process requirements for disciplinary proceedings opined that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. . . . Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975.

requirements).[7] Plaintiff received *Wolff*'s due process safeguards in his disciplinary hearing even though he was not deprived of a liberty interest when he was found not guilty. (Doc. 18 at 16-21, PageID.66-71, Disc. Rpt.). (*Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), made clear that an inmate is not required to receive the due process guarantees of *Wolff* when a deprivation of a liberty interest does not occur. *Id.* at 486-87, 115 S.Ct. at 2301-02).

In *Sandin*, the plaintiff was found guilty of high misconduct and low misconduct and received a sentence of thirty days in disciplinary segregation on the high misconduct charge. 515 U.S. at 475-76, 115 S.Ct. at 2296. Nine months later, the deputy commissioner found the high misconduct charge was unfounded and expunged the charge from plaintiff's record. *Id.* at 476, 115 S.Ct. at 2296. Before the high misconduct charge was expunged, the plaintiff filed a § 1983 action against officials based on his disciplinary. *Id.* The plaintiff's § 1983 case went to the Supreme Court where he did not receive any relief even though the Court was aware that the high misconduct charge was baseless and had been expunged. *Id.* at 487, 115 S.Ct. at 2302.

The Supreme Court ruled that it was returning to its prior reasoning that a liberty interest is an interest of real substance, that is, a grievous loss, instead of an interpretation of a regulation, and that now liberty "interests will be generally

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 478, 480, 484, 115 S.Ct. at 2297-98, 2300. The Court held that plaintiff's thirty-day segregation "confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. at 2301. The Court, noting that his conditions in disciplinary segregation as mostly mirroring the conditions in administrative segregation and protective custody and that inmates at the prison experienced great amounts of lockdown time as well, found that his thirty-day sentence "did not work a major disruption in environment." *Id.* The Court determined that neither the prison regulation nor the Due Process Clause itself provided the plaintiff a liberty interest that would entitle him to *Wolff's* procedural due process protections as the disciplinary sentence was within the range of confinement to be expected considering his criminal sentence was thirty years to life. *Id.* And "[t]he chance that a finding of misconduct will alter the balance [in parole determination] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause," according to the Court. *Id.* Therefore, a claim for simply making a false charge on the facts as alleged is frivolous as a matter of law. *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831-32 (a frivolous claim lacks an arguable basis in law).

In further examining Plaintiff's claim that he was falsely charged, and giving

a liberal construction to his allegations, did Plaintiff intend to bring a malicious prosecution claim under the Fourth Amendment? The Fourth Amendment is typically concerned with criminal proceedings.[8] *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions."); *but see Leslie v. Doyle,* 125 F.3d 1132, 1135-36, 1138 (7th Cir. 1997) (analyzing Plaintiff's claim under the Fourth, Eighth, and Fourteenth Amendments and finding they provided no relief even though the plaintiff had been exonerated after serving his disciplinary sentence). And the Supreme Court has held that the Fourth Amendment has no applicability to a claim arising from a search of a prison cell. *Hudson v. Palmer*, 468 U.S. 517, 536, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984). Therefore, it is not abundantly clear if a claim for malicious prosecution under the Fourth Amendment is available to Plaintiff.

However, if a malicious prosecution claim is available, the Eleventh Circuit has ruled that to establish a § 1983 malicious prosecution claim arising from a criminal prosecution in Alabama, a plaintiff must prove:

---

[8] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

(1) the elements of the common law tort of malicious
prosecution; and (2) a violation of his Fourth Amendment
right to be free from unreasonable seizures." *Id* (citations
omitted). "As to the first prong, the constituent elements
of the common law tort of malicious prosecution are: '(1) a
criminal prosecution instituted or continued by the
present defendant; (2) with malice and without probable
cause; (3) that terminated in the *plaintiff accused's favor*;
and (4) caused damage to the plaintiff accused.'" *Id.*
(citations omitted) (emphasis added). "The elements
under Alabama law for the common-law tort of malicious
prosecution are the same, except that they require only a
'judicial proceeding' not a 'criminal prosecution.'" *Id.*
(quoting *Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831–32
(Ala. 1999)) (emphasis in original).

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256-57 (11th Cir. 2010); *see Williams v. Aguirre,* 965 F.3d 1147, 1157 (11th Cir. 2020) ("Under the common-law elements of malicious prosecution, [the plaintiff] must prove that the officers 'instituted or continued' a criminal prosecution against him, 'with malice and without probable cause,' that terminated in his favor and caused damage to him." (internal quotation marks omitted); *see also Dueberry v. Myers*, 2011 WL 4591236, at *6 (S.D. Ala. 2011) (unpublished) (applying *Grider*'s malicious prosecution elements to a disciplinary proceeding); *but cf. Smith v. Mitchell,* 2021 WL 1292751, at *2 (11th Cir. Apr. 7, 2021) (unpublished) (finding the Eleventh Circuit has not specifically addressed whether a probation violation is a criminal prosecution for a § 1983 malicious prosecution claim, but noting other courts have found a probation violation is not a criminal proceeding and, therefore, the claim accrued at the time of his arrest because his probation had been previously terminated, and not upon his release, and thus his claim was time-barred).  Nevertheless, Plaintiff cannot

14

satisfy the elements of a malicious prosecution claim because when Defendant Kidd charged Plaintiff, she had probable cause to charge him with a violation of the administrative regulations based on other information she received and on information she received from Defendant Wright, even though later Plaintiff claimed the information was false. No information is contained in the allegations that she knew the information she received was not credible. (Doc. 18 at 9, 16, 18, PageID.59, 66, 68). *See Fox v. Graff*, 276 F. App'x 936, 939 (11th Cir. 2008) (finding the dismissal of the malicious prosecution claim was proper because the plaintiff could not show the absence of probable of cause). Therefore, a malicious prosecution claim would be frivolous. *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831-32 (a frivolous claim lacks an arguable basis in law); *Jibrin v. Abubakar*, 814 F. App'x 480, 485 (11th Cir. 2020) (affirming the dismissal of a malicious prosecution claim as frivolous as probable cause existed).

### 2. Eighth Amendment.

Plaintiff also alleges a violation of the "Eighth Amendment," "deliberate indifference," and an unspecified violation of the "administrative regulations." Deliberate indifference is not an independent claim but is an element of an Eighth Amendment claim. *See infra.* The only connection the Court discerns to an Eighth Amendment claim involving Defendant Kidd is the reference that Plaintiff was placed in administrative segregation for thirty months or more while the state charge for capital murder is pending. (Doc. 18 at 8, PageID.58). And in his allegations against Defendant Wright, he states that he has lost all privileges that

population inmates have access to, such as "educational programs, religio[us] service[s], extra yard time etc.[,]" and "has suffered in so many ways [that] it's difficult to express a first experience." (Doc. 18 at 13, PageID.63). No other allegations appear in the third amended complaint that can be plausibly connected to an Eighth Amendment claim.

The Eighth Amendment is violated by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).[9] The first element requires that the deprivation be objectively sufficiently serious, that is, it must be shown that "conditions pos[ed] a substantial risk of serious harm." *Id.* at 834, 114 S.Ct. at 1977. The second element of an Eighth Amendment claim, a subjective element, requires that the prison official's "state of mind [be] one of 'deliberate indifference' to inmate health or safety." *Id.* (citations omitted). Plaintiff's allegations of the loss of certain privileges while in administrative segregation do not present a substantial risk of serious harm and are therefore not consistent with a harm that violates the Eighth Amendment's prohibition on cruel and unusual punishment. That is, Plaintiff's loss of "educational programs, religio[us] service[s], extra yard time etc.[,]" is not a deprivation of a single human

_____

[9] The Court is foregoing a discussion on an Eighth Amendment claim for excessive force because such a claim is not consistent with Plaintiff's allegations. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (ascertaining when prison officials are accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is. . . : whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

need or of life's necessities, nor is the loss extreme. *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (finding that the absence of religious services in isolation did not violate the Eighth Amendment as it did not involve "life's necessities," such as water, food, and shelter, and did not cause the unnecessary and wanton infliction of pain); *cf. Chandler v. Crosby,* 379 F.3d 1278, 1297-98 (11th Cir. 2004) (finding the temperatures in Florida's death-row cells during the summer ranged from eighty degrees to ninety-five degrees, while unpleasant, were not extreme and therefore did not violate the Eighth Amendment); *Saunders v. Sheriff of Brevard Cnty.,* 735 F. App'x 559, 571 (11th Cir.) (finding the plaintiff "fail[ed] to illustrate the deprivation of either the *Wilson* Court's 'single, identifiable human need' . . . or the *Rhodes* Court's 'minimal civilized measures of life's necessities'" when the air conditioner stopped working for two days), *cert. denied,* 139 S.Ct. 1325 (2019); *Turner v. Warden, GDCP,* 650 F. App'x 695, 701-02 (11th Cir. 2016) (finding that the temperatures were merely uncomfortable, the lack of food for twenty-four hours did not jeopardize his health, and therefore these conditions did not constitute cruel and unusual deprivations), *cert. denied,* 137 S.Ct. 2159 (2017).

In addition, Plaintiff is claiming that Defendant Kidd is responsible for his thirty-plus-month confinement in administrative segregation while capital murder charges are pending against him, which is a violation of the Eighth Amendment. *See Daker v. Warden,* 805 F. App'x 648, 650 (11th Cir.) (recognizing that the length of an inmate's confinement to administrative segregation may constitute cruel and unusual punishment), *cert. denied*, 141 S.Ct. 816 (2020). Plaintiff's classification

summary attached to the complaint (Doc. 18 at 23, PageID.73), however, undercuts

his claim. Plaintiff was reclassified on February 13, 2019[10] to close custody, level 5,

by officials other than Defendant Kidd.[11] (*Id.*). The classification summary shows

that any role that Defendant Kidd may have had was terminated by the intervening

actions of classification officials in reclassifying Plaintiff on February 13, 2019 and

placing him in close custody. *See Williams v. Bennett,* 689 F.2d 1370, 1380 (11th

Cir.) (a defendant must be causally connected to a deprivation of constitutional or

federal right to state a § 1983 claim), *cert. denied*, 464 U.S. 932 (1983); *cf. Barts v.

Joyner*, 865 F.2d 1187, 1195-96 (11th Cir.) ("We reject plaintiff's contention that she

is entitled to damages for her criminal trials, conviction, incarceration, and the

resulting aggravation of her Rape Trauma Syndrome [as] [t]he intervening acts of

the prosecutor, grand jury, judge and jury . . . each break the chain of causation

unless plaintiff can show that these intervening acts were the result of deception or

undue pressure by the defendant policemen"), *cert. denied,* 493 U.S. 931 (1989).

Furthermore, Plaintiff "has no constitutionally protected liberty interest in being

---

[10]   February 13, 2019 is the latest date reflected on the classification summary.

[11]   According to ADOC's website, "Close: The most restrictive custody level to which an inmate can be assigned. Inmates in this custody will be housed in a single cell in a close security institution. Movement outside the housing area requires that the inmate be restrained and accompanied by armed correctional personnel . . . ." (www.doc.state.al.us//Definitions#CLOSE (last visited May 4, 2021)), and "Close Custody – Close custody is the most restrictive custody level and generally indicates that an inmate may be prone to violent behavior, is an escape risk or refuses to follow the rules and regulations. Close custody inmates are housed in a single cell and are allowed to leave the cell only for exercise and showering[,]" (www.doc.state.al.us, PublicMaleInmateHandbook-8 pdf (last visited May 4, 2021)).

classified at a certain security level or housed in a certain prison[,]" as the transfer of a state prisoner to a less agreeable prison does not trigger a due process violation and prisoner classification is controlled by officials who have full discretion. *Kramer v. Donald,* 286 F. App'x 674, 677 (11th Cir. 2008) (citing *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (transfer); *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976) (classification)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

No deception occurred in the decision to classify Plaintiff to close custody. Both versions of Defendant Wright's observations were contained in the classification summary as was the fact that Plaintiff was found not guilty of the homicide disciplinary. (Doc. 18 at 23, PageID.73). (And the disciplinary report, if considered, contained Plaintiff's disciplinary testimony. (*Id.* at 18-19, PageID.68-69)). Furthermore, Plaintiff's allegations do not describe Defendant Kidd's role in his initial administrative-segregation placement. Therefore, a claim against Defendant Kidd for Plaintiff's placement in administrative segregation after he was reclassified is frivolous. And a claim for his placement in administrative segregation after he was charged and before he was reclassified has not been stated against Defendant Kidd. *Anthony v. Warden*, 823 F. App'x 703, 708 (11th Cir. 2020) (finding

that "[o]n its own, administrative segregation generally does not violate the Eighth

Amendment[,]" and absent a harsh condition, the plaintiff's six-month confinement

did not violate the Eighth Amendment)[12]; *Sheley v. Dugger,* 833 F.2d 1420, 1428-29

(11th Cir. 1987) ("It is clear that administrative segregation and solitary

confinement do not, in and of themselves, constitute cruel and unusual

punishment").[13]

---

[12]    In *Anthony v. Warden*, *supra,* after the plaintiff served his 25-day disciplinary sentence for assaulting an inmate, he was reclassified to preventative status and transferred to Limestone Correctional Facility ("Limestone") (where Plaintiff is presently incarcerated) to administrative segregation for six months.  The plaintiff complained that the extension of his segregation as being violative of his Eighth and Fourteenth Amendment rights.  823 F. App'x at 706.

Having determined that his segregation and restricted exercise schedule did not exceed the criminal sentence imposed on him by the court, the Eleventh Circuit found "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." 823 F. App'x at 707 (citation and quotation marks omitted).  The Court observed that his "transfer to Limestone and placement in the 'Restrictive Housing Unit' were not punitive but rather administrative measures based on his new heightened custody status[,]" and when an inmate is no longer on "preventative status," he is transferred to another facility, which is how the plaintiff was treated.  *Id.*  The Court noted that even though the plaintiff complained that the opportunities for exercise did not meet his daily needs, he did not allege that he was prevented from exercising in his cell and the evidence showed that he did not fully use the numerous opportunities for exercise.  *Id.* at 706-08.  The Eleventh Circuit concluded that "neither [his] segregated confinement nor the attendant restrictions on physical exercise offend[ed] either the Eighth or Fourteenth Amendments."  *Id.* at 707.

[13] The time-period from the incident on December 2, 2018 until Plaintiff's increase in custody on February 13, 2019 is relatively short period of time.  The Eleventh Circuit has found that longer time periods in administrative segregation did not violate the Fourteenth Amendment.  *Morefield v. Smith,* 404 F. App'x 443, 446 (11th Cir. 2010) (finding that plaintiff's *four-year* administrative-segregation confinement, while lengthy, did not establish a liberty interest considering that the conditions of his confinement were comparable to general population conditions and he received notice, an opportunity for rebuttal during his original hearing, and periodic reviews of his status); *Al-Amin v. Donald*, 165 F. App'x 733, 737-38 (11th Cir. 2006) (finding that based on the facts of the case where the plaintiff was being held in administrative segregation for *thirty months* under conditions substantially similar to the general population, the plaintiff did not have a liberty interest to be free from administrative segregation confinement); *see also Rodgers v.*

The Eleventh Circuit has counseled that in most circumstances, a *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice," where a more carefully drafted complaint might state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (holding that the *Bank* rule does not apply to counseled plaintiffs); *see Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (same). In this instance, it is recommended that Plaintiff be granted leave to amend his administrative segregation claim against Defendant Kidd for the period from his initial placement in administrative segregation near December 2, 2018 until his custody was changed on February 13, 2019 (or the date his custody was changed if prior to February 13, 2019) for the purpose of stating a claim against her.

### 3. Violation of Unidentified Administrative Regulation.

Plaintiff alleges that Defendant Kidd violated the Administrative Regulations without identifying a specific regulation. This conclusory assertion does not state claim. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (vague and conclusory claims are subject to dismissal); *see Twombly*, 550 U.S. at

---

*Singletary,* 142 F.3d 1252, 1252-53 (11th Cir. 1998) (holding that the plaintiff had not shown a deprivation of a protected liberty interest as defined by *Sandin* on the claim that the officer filed a false disciplinary report against him causing his placement in administrative segregation pending the disciplinary's resolution and for his continued *two-month* placement in administrative segregation pending the resolution of the criminal charges from the altercation after the disciplinary was dismissed for a technical reason); *Walker v. Grable,* 414 F. App'x 187, 188 (11th Cir. 2011) (affirming the *sua sponte* dismissal of the plaintiff's claim that he could not be placed in administrative segregation for *eleven days* without cause as no loss of a liberty interest was involved).

555, 557, 127 S.Ct. at 1965-66 (to state a claim the allegations must be plausible, containing enough heft to show the pleader is entitled to relief); *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . [but] mere conclusory statements[] do not suffice." ).  Moreover, if a regulation had been identified, a violation of a state agency of its own regulation does not necessarily rise to the level of a constitutional violation needed to state a § 1983 action.  *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527 (11th Cir. 1987) ("[E]ven if the state statute has been violated, that does not prove a violation of a federal constitutional right."); *Smith v. Georgia*, 684 F.2d 729, 732 n.6 (11th Cir. 1982) ("Not every violation of a state agency of its own rules rises to the level of a due process infringement."); *Young,* 390 F. App'x at 983-84 (observing the plaintiff was not entitled to declaratory relief for a violation of prison administrative regulations governing the handling of disciplinary hearings as a violation of due process had not occurred).  Considering the other allegations directed to Defendant Kidd, and in the absence of information about a specific regulation, the undersigned cannot conceive of an instance when a violation of an administrative regulation by Defendant Kidd would cause a violation of Plaintiff's constitutional rights.  Therefore, it is recommended that this claim be dismissed as frivolous.  *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831-32.


**B.  Claim II – Defendant Darren Wright.**

### 1. False Statement.

Turning to the second Defendant, Plaintiff is bringing a claim against Defendant Wright for falsely accusing him in a sworn incident report of stabbing and murdering inmate Armstrong. This is causing him to fear for his life in violation of the Eighth Amendment and Alabama Administrative Regulations. Plaintiff further claims that he is suffering in administrative segregation because of Defendant Wright.

Plaintiff's allegations against Defendant Wright do not convey a clear and cohesive claim for a violation of a constitutional or federal right. When pleading a complaint in federal court, a plaintiff must plead a plausible claim with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. And factual allegations must be alleged for each element of the claim. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir.), *cert. denied,* 568 U.S. 1088 (2013). Allegations merely consisting of "labels and conclusions" and the "unadorned, the-defendant-unlawfully-harmed me accusation" are not adequate. *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 (citation omitted); *Twombly*, 550 U.S.at 555, 127 S.Ct. at 1965. "[T]here [must be] at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." *Jones v. Fla. Parole Comm'n,* 787 F.3d 1105, 1107 (11th Cir. 2015).

Additionally, a § 1983 plaintiff must show in his complaint that he was deprived of a constitutional or federal right by a state actor. *Harvey v. Harvey,* 949

F.2d 1127, 1130 (11th Cir. 1992). There must be "an affirmative causal connection" between the state actor and the deprivation of the constitutional or federal right. *Williams v. Bennett,* 689 F.2d at 1380.

Plaintiff alleged Defendant Wright falsely accused him in a sworn incident report of the stabbing and murder of inmate Armstrong. This incident report is not attached to the third amended complaint but is referred to in the disciplinary report (Doc. 18 at 19, PageID.69) and in the classification summary as HCF-18-01387, (*id.* at 23, PageID.73). Case law reflects that false information alone does not violate a constitutional right. *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) ("prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim"). Rather, it is the reliance on information that is known to be false that is necessary for a constitutional due process violation to be stated. *Id.*; *see Monroe v. Thigpen*, 932 F.2d 1437, 1422 (11th Cir. 1991) (finding the Alabama parole board violated due process by acting arbitrarily and capriciously when they admitted to having relied *on information known to be false* to deny the inmate parole and to classify the inmate as a sex offender, and distinguishing its decision from *Slocum v. Ga. State Bd. of Pardons & Paroles*, 678 F.2d 940 (11th Cir. 1982)).

In *Slocum v. Ga. State Bd. of Pardons & Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982), a parole official in an interview asked the petitioner about his pandering and unemployment prior to his incarceration. *Id.* at 940. The Court noted that petitioner's response was not in the record, but since the

interview, petitioner maintained that he was a legitimate wage earner. *Id.*

Because the petitioner believed the board member's question was based on erroneous information in his file, he filed a petition for the writ of habeas corpus against the board and its members, challenging their adverse parole decision as being based on erroneous information. *Id.* at 941. After the denial of his habeas petition, he filed an appeal because he believed that the board denied him due process by considering erroneous information in his file when it denied him parole and refused him access to his parole files. *Id.* Inasmuch as the petitioner did not have a liberty interest in parole, the Eleventh Circuit held that no due process violation occurred regarding the use on allegedly erroneous information. *Id.* at 942. The Court maintained that "[u]nless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness." *Id.* The Court further reasoned that "petitioner had not established a due process right to inspect his parole file." *Id.*

Plaintiff's position is like the petitioner in *Slocum*. Plaintiff has not identified a liberty interest *per se* that is being impacted by the alleged erroneous information in the incident report. However, Plaintiff later states that he is in administrative segregation because of Defendant Wright's sworn false statements in the incident report. (Doc. 18 at 11, PageID.61).[14] The mere fact that the incident

---

[14] The attachments to the third amended complaint did not assist in clarifying Plaintiff's claim. In fact, Exhibit F, which is one page from a four-page document, possibly an incident report, identified in the upper left corner as being associated with 18-4086, contradicts Plaintiff's statement that Defendant Wright stated that Plaintiff stabbed inmate Armstrong, when it states:

report contains allegedly false information is not sufficient to state a due process

claim, *Slocum, supra; Jones,* 279 F.3d at 946, as Plaintiff has not shown that he has

a liberty interest in not being confined to administrative segregation. *Anthony,*

*supra*, 823 F. App'x at 708 (finding that "[o]n its own, administrative segregation

---

> CO Wright stated that he recognized one of the 4 inmates stabbing Inmate Armstrong as an inmate known as the nickname "Cocoa". CO Wright states that he did not know "Cocoa's" real name[ ] but could definitely pick "Cocoa" out of a lineup. CO Wright described "Cocoa" as a B/M with a beard.
>
> . . . .
>
> On Sunday, December 2, 2018 at approximately 2325 hours, SA Jones and Agent Gary Peek presented a lineup to CO Wright with a total of 9 photos in the lineup. *CO Wright positively identified photo #2 which was Inmate Courtney Smith B/ 263443 "Cocoa", as one of the 4 inmates he witnessed stabbing Inmate Armstrong in A-Dorm.* CO Wright circled Inmate Smith's photo and placed the date and time beside Inmate Smith's photo acknowledging the positive identification of Inmate Smith. (emphases added)

(*Id.* at 24, PageID.74). According to this document, Defendant Wright identified inmate Courtney Smith B/263443, not Plaintiff Courtney Maurice Smith B/181090, as an assailant. Thus, this document does not support the claim that Defendant Wright identified Plaintiff as one of the assailants.

However, Exhibit E, the classification summary, refers to an incident report with a different number, HCF-18-01387, which was not attached, that states on December 2, 2018, Defendant "Wright observed and identified inmate Smith stabbing another inmate who later died from his wounds." (Doc. 18 at 23, PageID.73). Along with this statement in the classification summary is included the statement that on December 26, 2018, in the disciplinary hearing Defendant Wright informed the hearing officer that he did not actually see Plaintiff stab the victim, but it appeared that Plaintiff did have a knife. (*Id.*). The incident report number in the classification summary is the same number as the disciplinary proceeding, HCF-18-01387, against Plaintiff on the homicide charge. (*See* Doc. 18 at 18, PageID.68, Disc. Rpt). Like the classification summary, the disciplinary report contains both versions of Defendant Wright's statement, which are next to each other. (*Id.* at 19, PageID.69). Both documents reflect that Plaintiff was found not guilty in the disciplinary proceeding. (*Id.* at 19, 23, PageID.69, 73).

generally does not violate the Eighth Amendment[,]" absent a harsh condition); *Sheley, supra*, 833 F.2d at 1428-29 (by themselves, administrative segregation and solitary confinement do not constitute cruel and unusual punishment"). *Cf. Paul v. Davis*, 424 U.S. 693, 707-10, 96 S.Ct. 1155, 1164-65, 47 L.Ed.2d 405 (1976) (holding the state-law tort of defamation is not transformed into a due process violation because it was committed by a state actor unless it occurs in the course of employment termination); *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1302 (11th Cir. 2001) (ruling that *Paul* held defamation alone was not deprivation of liberty or property interest, but it must be accompanied by some "denial of a right or status previously recognized under state law" in order to proceed under § 1983). Thus, the fact that an incident report contains allegedly false information does not by itself rise to the level of a constitutional deprivation and is, therefore, frivolous.

## 2. Administrative Segregation.

The undersigned is liberally construing a claim from the allegations that the allegedly false information by Defendant Wright is causing Plaintiff to suffer in administrative segregation. (Doc. 18 at 11, PageID.61). Plaintiff must causally connect Defendant Wright's statements to his placement in administrative segregation. *Williams,* 689 F.2d at 1380. As discussed above regarding Defendant Kidd, Plaintiff's thirty-plus-month placement in administrative segregation is based on a decision made by the classification specialist, the Central Review Board, psych associate, and warden to classify him to close custody, which requires single-cell placement. (Doc. 18 at 23, PageID.73). Granted the classification summary contains

Defendant Wright's statement that he saw Plaintiff stabbing inmate Armstrong and his later statement that he did not actually witness Plaintiff stabbing inmate Armstrong, but he saw Plaintiff with what appeared to be a knife. (*Id.*). The classification summary also includes that Plaintiff was found not guilty of the disciplinary violation. (*Id.*). Furthermore, the classification summary reflects his administrative segregation placement is also dependent on "his detainer warrant for murder [being] resolved." (*Id.*). This warrant was obtained by an investigator based on his and another investigator's investigation. (Doc. 18 at 12, PageID.62). These intervening events by other persons break the causal connection between Defendant Wright and Plaintiff's continued administrative segregation placement. *See Barts, supra.* Thus, due to the lack of causal connection, and because there is no right not to be confined to administrative segregation, Plaintiff's claim against Defendant Wright for his thirty-plus-month placement in administrative segregation is frivolous. *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831-32.

### 3. Fear for His Life.

Turning to Plaintiff's other allegations against Defendant Wright, he states that this allegedly false statement is causing him to fear for his life in violation of the Eighth Amendment and Alabama's Administrative Regulations. (Doc. 18 at 11, PageID.61). Plaintiff does not explain why this false statement is causing him to fear for his life. The Court can only deduce after reviewing allegations that Plaintiff fears for his life because he is facing a capital murder charge. With respect to the murder charge, this Court generally will not involve itself in pending state-court

28

criminal proceedings. *Younger v. Harris,* 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971) (there is a "longstanding public policy against federal court interference with state court proceedings" as this policy gives "proper respect for state functions").

In addition, the Eighth Amendment does not extend to the pending state charges, as it "applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime." *Hamm v. DeKalb Cnty.,* 774 F.2d 1567, 1572 (11th Cir.), *cert. denied,* 475 U.S. 1096 (1986). Therefore, to state an Eighth Amendment claim against Defendant Wright, Plaintiff must connect Defendant Wright to a condition that is a consequence of his present conviction. Reviewing Plaintiff's allegations, the only condition related to his present incarceration is his confinement to administrative segregation. In the Court's discussion regarding Defendant Kidd, it found that an Eighth Amendment claim was not stated with respect to the complained about conditions in administrative segregation[15], *see supra,* and that his Eighth Amendment claim for his thirty-plus-month confinement to administrative segregation against Defendant Wright was frivolous, *see supra.*

Plaintiff also complains that he fears for his life in violation of Alabama Administrative Regulation 403. (Doc. 18 at 11, PageID.61). Even though Plaintiff mentions Regulation 403, he does not specify to which section of the regulation he is

---

[15] These conditions were contained in the allegations against Defendant Wright, namely, Plaintiff's loss of educational programs, religious services, and extra yard time. (Doc. 18 at 13, PageID.63).

referring.  (www.doc.state.al.us/Regulations last visited May 10, 2021).  Regulation 403 describes the disciplinary procedures used when an inmate violates an administrative rule and lists numerous administrative rules describing unacceptable inmate behaviors.  (*Id.*).  Plaintiff merely mentions the regulation but does not explain his allegation that because he fears for his life, a violation of the Administrative Regulations occurred.  Nor is an explanation offered as to how Defendant Wright violated Administrative Regulation 403.  Therefore, considering the vague and conclusory nature of this claim and the absence of cohesion in his allegations pointing to a recognizable claim, the Court finds that this claim is due to be dismissed as frivolous.  *Fullman,* 739 F.2d at 556-57 (vague and conclusory claims are subject to dismissal); *see also Smith*, *supra*, 684 F.2d at 732 n.6 (a violation by a state agency of its rules does not necessarily rise to the level of a constitutional violation).

## IV.  Conclusion.

Based upon the foregoing reasons, it is recommended that the Eighth Amendment claim against Defendant Kidd based on Plaintiff's administrative segregation confinement from December 2, 2018 to February 13, 2019 (when he was reclassified) be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a claim upon which relief can be granted, *with leave to amend for the purpose of stating a claim against Defendant Kidd based on this period of administrative segregation confinement,* and it is further recommended that the other claims in this action against Defendant Ashley Kidd

and Defendant Darren Wright be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

**DONE** and **ORDERED** this 20th day of May, 2021.

/s/ KATHERINE P. NELSON
**UNITED STATES MAGISTRATE JUDGE**